UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MONICA CIPULLY | : | |
| v. | : | NO.: |
| LACEY TOWNSHIP SCHOOL DISTRICT | : | **JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

### *Parties*

1. Plaintiff, Monica Cipully, is an adult individual who at all times material to this action resided at and continues to resides at 12 Wilson Drive, Howell, NJ 07731.

2. Defendant, Lacey Township School District, is a public school district with main offices at 200 Western Blvd, Lanoka Harbor, NJ 08734 which is located in Lacey Township, Ocean County, New Jersey.

### *Jurisdiction*

3. This matter has federal jurisdiction pursuant to the Family and Medical Leave Act of 1993 (hereinafter "FMLA"), 29 U.S.C. Section 2601, et seq.

### *Facts*

4. The defendant was, at all times material hereto, an "employer" pursuant to the FMLA in that it was engaged in commerce and employed 50 or more persons within a 75 mile radius of plaintiff's work location at in Lacey Township, New Jersey.

5. Plaintiff commenced employment with defendant on August 1,

2017 as its Director of Food Service.

6. Plaintiff worked the entire 2017-2018 school year without incident.

7. Plaintiff's performance was excellent and, on or about June 2018, she received an excellent review from Patrick DeGeorge (defendant's Business Administrator).

8. Mr. DeGeorge commended her on her excellent attendance among other things.

9. Plaintiff's contract was renewed for one year commencing on July 1, 2018 by Mr. DeGeorge.

10. In about mid-July 2018, plaintiff informed Mr. DeGeorge that she was scheduled to undergo anterior cervical spine surgery on August 22, 2018 and would need to take some time off thereafter to recover from the surgery.

11. Mr. DeGeorge immediately replied with a serious look on his: "So long as you are back before school starts."

12. Plaintiff was intimidated by this directive from Mr. DeGeorge and thereafter planned to return to work with defendant by Thursday, August 30, 2018, which was one week prior to the commencement of the 2018-2019 school year, which was scheduled to start on September 6, 2018.

13. Plaintiff did in fact take surgical leave with the knowing consent of defendant between August 21, 2018 and August 29, 2018.

14. While plaintiff was out on surgical leave, plaintiff's supervisor, Sharon Sylvia (Assistant Business Administrator), called, texted and emailed plaintiff constantly to ask her work-related questions.

15. While plaintiff was out on surgical leave, Ms. Sylvia emailed her that her that plaintiff's secretary was ordered not to do any of the work assignments that plaintiff gave her to take care of while plaintiff was out.

16. Plaintiff was thinking about extending her leave because her doctor did not approve her return to work as of August 30, 2018 as she had planned.

17. However, the constant phone calls and emails coupled with the directive from Mr. DeGeorge, made plaintiff feel as though she must return to work to keep her job with defendant.

18. Plaintiff was not approved to return to work by her doctor as of August 30, 2018, and returned against her doctor's recommendation due to the directives and intimidation by defendant's agents.

19. Plaintiff returned to work on August 30, 2018 because Mr. DeGeorge demanded that she do so.

20. As of August 1, 2018, plaintiff was an eligible employee under the FMLA because she had been employed with defendant for one year and she worked at least 1250 hours in the 12 months prior to that date.

21. When plaintiff returned to work from the aforesaid medical leave, she could was advised not to do anything that would exacerbate her neck including restrictions on standing, sitting, reaching, lifting and any other strenuous activity.

22. On several occasions after her return to work, in September 2018, plaintiff stressed to Mr. DeGeorge and Mr. Sylvia that she had not been released from the doctor to return to work and her hands were numb and her neck was painful.

23. Neither Mr. DeGeorge and Mr. Sylvia responded to plaintiff's notification that she should not be at the workplace for medical reasons.

24. Plaintiff notifications to Mr. DeGeorge and Ms. Sylvia that she was "not supposed to be at work" for medical reasons were requests for FMLA protected leave pursuant to the FMLA.

25. Defendant and its agents ignored plaintiff's notification that she should not be at work for medical reasons.

26. On October 2, 2018, plaintiff notified defendant that she was taking the day off to attend a follow-up appointment with her doctor related to her surgery.

27. During her doctor's visit, plaintiff's doctor stressed that plaintiff had not yet been released to return to work.

28. On October 10, 2018 (40 days after her return to work), plaintiff, who was working extended hours to perform her duties, sent an email to Ms. Sylvia and Mr. DeGeorge reminding them, in part, that she: "... had not been released from the doctor."

29. On October 12, 2018, plaintiff was called into a meeting with Mr. DeGeorge, Ms. Sylvia, Vanessa Clark (Superintendent) and Zina Scala (HR Representative) notified plaintiff was on administrative leave pending the Board Meeting that following Monday, October 15, 2018, based upon alleged poor performance and inappropriate conduct.

30. On October 16, 2018, plaintiff received a letter from defendant advising her that she was being terminated.

31. The proffered reasons given by defendant for plaintiff's termination are false and mere pretext to mask defendant's discriminatory motives.

32. The true reason why plaintiff was terminated was because she requested and took FMLA protected leave.

33. Between August 21, 2018 and August 30, 2018, plaintiff was entitled to take FMLA leave for her surgery.

34. As of August 21, 2018, plaintiff had not yet taken any other FMLA leave in the previous 12 months.

35. In September 2018 and October 10, 2018, plaintiff had requested additional FMLA leave by advising defendant that she was not yet released to work by her doctor.

36. Defendant interfered with plaintiff's right to take FMLA leave by placing a limit on her leave that was less than 12 weeks.

37. Defendant unlawfully terminated plaintiff in violation of the FMLA because plaintiff sought to enforce her FMLA rights.

38. Plaintiff acted in good faith at all times material hereto.

39. Plaintiff timely reported the need to take FMLA leave to defendant at all times material hereto.

40. Defendant violated the FMLA by unlawfully refusing to allow plaintiff her right to take lawful FMLA protected leave through intimidation and other means, and by unlawfully terminating the plaintiff because she requested and took FMLA leave.

41. As a direct result of defendant's unlawful conduct as described herein, plaintiff has suffered and will continue in the future to suffer actual damages in the form of lost back pay, lost future earnings, lost bonuses, lost benefits and other financial losses.

42. Plaintiff has engaged in great efforts to mitigate his damages by searching for new employment, but she has been unsuccessful in his efforts to find new employment to date.

43. Plaintiff is entitled to recover liquidated damages in the same amount as actual damages due to defendant's intentional and knowing bad faith violations of the FMLA.

44. Plaintiff is entitled to recover reasonable attorneys' fees and costs associated with the prosecution of this lawsuit.

45. Plaintiff is entitled to reinstatement of employment.

COUNT 1-- Violation of the FMLA-- Interference

41. Plaintiff incorporates by reference paragraphs 1-40 below.

42. Defendant unlawfully interfered with plaintiff's rights to request up to 12 weeks of FMLA protected leave.

43. Defendant and its agents intimidated plaintiff to limit her FMLA leave to only 8 consecutive days by mandating her return from surgery prior to the start of the school year.

44. Rather than respond to plaintiff's notification that she needed to be out of work, defendant interfered with plaintiff's request to go back out on FMLA leave by ignoring her request and terminating her employment rather than allow her to be out of work for medical reasons.

WHEREFORE, Plaintiff demands that judgment be entered in her favor on Count 1 and against defendant for lost back pay, lost future earning, liquidated damages, reasonable attorneys' fees, costs, reinstatement of his employment, equitable relief in the form of an order prohibiting defendant from interfering with the FMLA rights of its employees in the future, and any other relief that this Honorable Court deems to be fair and proper.

COUNT 2– Violations of the FMLA—Retaliation/Discrimination

45. Plaintiff incorporates by reference paragraphs 1-44 below.

46. Defendant and its agents violated the FMLA by terminating plaintiff because she exercised her rights under the FMLA and took and requested FMLA protected leave.

47. Defendant and its agents violated the FMLA by terminating plaintiff in retaliation for requesting and/or taking FMLA leave.

48. Defendant and its agents violated the FMLA by discriminating against plaintiff for taking FMLA leave.

WHEREFORE, Plaintiff demands that judgment be entered in her favor on Count 2 and against defendant for lost back pay, lost future earning, liquidated damages, reasonable attorneys' fees, costs, reinstatement of his employment and any other relief that this Honorable Court deems to be fair and proper.

COUNT 3– Violations of the NJLAD—Disability Discrimination

49. Plaintiff incorporates by reference paragraphs 1-48 below.

50. The New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-3 prohibits employers from discriminating against employees on the basis of disability and/or perceived disability.

51. Defendant knew that plaintiff suffered from a serious neck condition that necessitated surgery.

52. Defendant knew or perceived that plaintiff suffered from a non-transient, chronic or permanent neck condition which qualified as a disability and/or perceived disability pursuant to the NJLAD.

53. Defendant violated the NJLAD by terminating plaintiff because she requested an accommodation by requesting FMLA leave and/or because of her aforementioned disability and/or perceived disability.

54. Plaintiff thus seeks damages, including but not limited to, lost pay, lost benefits, compensatory damages for pain and suffering, punitive damages, attorneys fees and costs.

WHEREFORE, plaintiff demands that judgment be entered in her favor on Count 3 and against defendant for amount to be determined by a jury for lost pay and benefits, pain and suffering, emotional distress, mental anguish, harm to reputation, punitive damages, costs, reasonable attorney's fees, and such other relief as the Court deems just and fair.

COUNT 4– Violations of the NJLAD—Age Discrimination

55. Plaintiff incorporates by reference paragraphs 1-54 below.

56. The New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-3 prohibits employers from discriminating against employees on the basis of age.

57. In October 2018, plaintiff was 49 years old.

58. Defendant knew that plaintiff suffered from a serious neck condition that necessitated surgery.

59. Defendant believed that due to plaintiff's serious neck condition that necessitated surgery and which resulted in her having to miss work was related to her age.

60. Defendant violated the NJLAD by terminating plaintiff because of plaintiff's age and the stereotypes associated with her age as it relates to health and attendance.

61. Plaintiff was replaced with a much younger person who was about 26 years old in October 2018.

62. Plaintiff thus seeks damages, including but not limited to, lost pay, lost benefits, compensatory damages for pain and suffering, punitive damages, attorneys fees and costs.

WHEREFORE, plaintiff demands that judgment be entered in her favor on Count 1 and against defendant for damages in an amount to be determined by a jury for lost pay and benefits, pain and suffering, emotional distress, mental anguish, harm to reputation, punitive damages, costs, reasonable attorney's fees, and such other relief as the Court deems just and fair.

Samuel A. Dion, Esq.
Dion & Goldberger
1845 Walnut Street, Suite 1199
Philadelphia, PA 19103
(215) 546-6033
Fax (215) 546-6269
Email: samueldion@aol.com

Date: February 18, 2019